```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
In re:                                                 :
                                                       :    Adv. Proc. No. 08-01789 (SMB)
SECURITIES INVESTOR PROTECTION                         :
CORPORATION,                                           :    SIPA Liquidation
                                                       :    (Substantively Consolidated)
                        Plaintiff-Applicant,           :
                                                       :
        – against –                                    :
                                                       :
BERNARD L. MADOFF INVESTMENT                           :
SECURITIES LLC,                                        :
                                                       :
                        Defendant.                     :
-------------------------------------------------------X
In re:                                                 :
                                                       :
BERNARD L. MADOFF,                                     :
                                                       :
                        Debtor.                        :
-------------------------------------------------------X
IRVING PICARD, Trustee for the Liquidation             :
of Bernard L. Madoff Investment Securities             :
LLC,                                                   :
                                                       :
                        Plaintiff,                     :
                                                       :
        – against –                                    :    Adv. Proc. No. 10-04417 (SMB)
                                                       :
THE LUSTIG FAMILY 1990 TRUST and                       :
DAVID I. LUSTIG, individually and in his               :
Capacity as Trustee for The Lustig Family              :
1990 Trust,                                            :
                                                       :
                        Defendants.                    :
-------------------------------------------------------X
IRVING PICARD, Trustee for the Liquidation             :
of Bernard L. Madoff Investment Securities             :
LLC,                                                   :
                                                       :
                        Plaintiff,                     :
                                                       :
        – against –                                    :    Adv. Proc. No. 10-04554 (SMB)
                                                       :
DAVID IVAN LUSTIG,                                     :
```

|                              |   |
|------------------------------|---|
|                 Defendant.   | : |

-----------------------------------------------------------X

# MEMORANDUM DECISION GRANTING PARTIAL SUMMARY JUDGMENT STRIKING CERTAIN AFFIRMATIVE DEFENSES

**A P P E A R A N C E S:**

**BAKER & HOSTETLER LLP**
*Attorneys for Plaintiff Irving Picard, Trustee*
45 Rockefeller Plaza
New York, NY 10111

    David J. Sheehan, Esq.
    Nicholas J. Cremona, Esq.
    Dean D. Hunt, Esq.
        Of Counsel

**LAW OFFICE OF RICHARD E. SIGNORELLI**
*Attorney for Defendants*
799 Broadway, Suite 539
New York, NY 10003

    Richard E. Signorelli, Esq.
    Bryan Ha, Esq.
        Of Counsel

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

       The defendants David Ivan Lustig ("Lustig") and the Lustig Family 1990 Trust ("Lustig Trust," and collectively with Lustig, the "Lustig Defendants") withdrew approximately $7 million in fictitious profits from their customer accounts maintained at Bernard L. Madoff Investment Securities LLC ("BLMIS"). They claim that they reinvested the withdrawn sums indirectly back into BLMIS through a series of transfers among other feeder funds that invested with Madoff, and all of the reinvested money was lost as a result of Madoff's Ponzi scheme.

Irving H. Picard (the "Trustee"), as trustee for the liquidation of BLMIS under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq.* ("SIPA"), sued the Lustig Defendants in separate adversary proceedings to recover the fictitious profits they withdrew. The Lustig Defendants asserted numerous affirmative defenses, several of which revolve around the concept that they are entitled to a credit for the amounts that others reinvested into BLMIS. The Trustee has moved to strike those defenses, (*Notice of Trustee's Motion to Strike Affirmative Defenses*, dated Feb. 28, 2017 (ECF Doc. # 73)),[1] and the parties have agreed to treat the Trustee's motion as a motion for partial summary judgment. For the reasons that follow, the Trustee's motion is granted.

**BACKGROUND**

The background to Madoff's Ponzi scheme has been recounted in numerous opinions, *e.g. SIPC v. BLMIS* (*In re BLMIS*), 424 B.R. 122, 125-32 (Bankr. S.D.N.Y. 2010), *aff'd*, 654 F.3d 229 (2d Cir. 2011), *cert. denied*, 133 S. Ct. 25 (2012), and need not be restated here as they are not in dispute on this motion. The Lustig Defendants maintained separate customer accounts with BLMIS. Between June 26, 2007 and September 25, 2008, the Lustig Trust withdrew $8.8 million from BLMIS Account 1ZB268, of which $4,241,336 constituted fictitious profits. On July 25, 2007, Lustig withdrew $2 million from BLMIS Account 1ZR297, of which $1,863,225 constituted fictitious profits.

According to the Lustig Defendants, they reinvested all of the withdrawn fictitious profits, totaling approximately $7 million, with Lakeview Investment, LP

---

[1] The parties filed identical papers in each adversary proceeding. Unless indicated otherwise, all ECF references are to the docket in Adversary Proceeding No. 10-04417.

("Lakeview").[2] They further allege that through a series of transfers among other funds and financial institutions, all of the withdrawn fictitious profits were eventually reinvested in BLMIS and ultimately lost. Specifically, the approximate $4.2 million withdrawn by the Lustig Trust, in the end, found its way into the customer account maintained by the Rye Select Broad Market Fund ("Rye Broad Market"), part of the Tremont Group. The approximate $2 million in fictitious profits withdrawn by Lustig was subsequently deposited by the Senator Fund ("Senator," and together with Rye Broad Market, the "Funds") in its own account at BLMIS.

The Trustee commenced an adversary proceeding against the Lustig Trust on November 30, 2010, (*Complaint*, dated Nov. 12, 2010 (ECF Doc. # 1)), and sued Lustig one day later. (*Complaint*, dated Nov. 12, 2010 (ECF Adv. Proc. No. 10-04554 Doc # 1).) The Trustee concedes that the Lustig Defendants were good faith transferees entitled to the protection of the safe harbor under 11 U.S.C. § 546(e). Accordingly, he seeks to avoid and recover the fictitious profits withdrawn within two years of the December 11, 2008 filing date of the SIPA proceeding as intentional fraudulent transfers pursuant to 11 U.S.C. § 548(a)(1)(A).

The Lustig Defendants denied the material allegations in the *Complaints*, and in relevant part, asserted identical affirmative defenses. (*See Answer*, dated May 2, 2016 (ECF Doc. # 58); *Answer,* dated May 2, 2016 (ECF Adv. Proc. No. 10-04554 Doc. # 61).) The Eighth through Twelfth Affirmative Defenses alleged that the entire sum that was

---

[2] The transfers are summarized in the *Letter from Richard E. Signorelli, Esq. and Bryan Ha, Esq. to the Court,* dated Jan. 6, 2017 (ECF Doc. # 66), and purport to be documented in exhibits attached to the *Declaration of Bryan Ha*, dated Mar. 31, 2017 (ECF Doc. # 78).

4

withdrawn by the Lustig Defendants was reinvested with BLMIS through Lakeview, the reinvested sums were lost as a result of Madoff's fraud, the Lustig Defendants did not actually receive any fictitious profits, and in fact, they lost money as a result of Madoff's fraud.  Based on these allegations, the Lustig Defendants contend that the Court should use its equitable powers to dismiss the claims, (Eight Affirmative Defense), and/or grant them an "equitable credit," (Ninth Affirmative Defense), the claims are barred by the single satisfaction rule under 11 U.S.C. § 550(d), (Tenth Affirmative Defense), they are entitled to a credit under the theory of recoupment, (Eleventh Affirmative Defense), and they are entitled to a set off under 11 U.S.C. § 553 (Twelfth Affirmative Defense).  The Lustig Defendants subsequently withdrew the set off defense, (*Defendants' Memorandum of Law in Opposition to Trustee's Motion to Strike Certain Affirmative Defenses*, dated Mar. 31, 2017 ("*Lustig Memo*"), at 17 n. 5 (ECF Doc. # 76)), and the motion directed at the Twelfth Affirmative Defense requires no further consideration.

The Trustee moved to strike these defenses as legally insufficient pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.  The Lustig Defendants submitted a substantial amount of documentary evidence and Lustig's affidavit in opposition, and at the Court's suggestion, the parties agreed to treat the motion as one for partial summary judgment dismissing these defenses.  To expedite consideration of the legal issues, I will assume solely for the purposes of the motion that the series of transfers occurred as the Lustig Defendants claim, the fictitious profits they withdrew were subsequently deposited by the Funds in their own BLMIS accounts, and the value of those accounts was effectively zero when the Madoff scandal was revealed.

5

Through his motion, the Trustee contends that the Bankruptcy Code does not authorize equitable defenses or an "equitable credit" to offset a fraudulent transfer. (*Memorandum of Law in Support of the Trustee's Motion to Strike Affirmative Defenses, dated Feb. 28, 2017* ("*Trustee Memo*"), at 5-7 (ECF Doc. # 74).) Further, the single satisfaction rule codified in 11 U.S.C. § 550(d) is inapplicable because we are dealing with separate initial transfers to the Lustig Defendants and the Funds, (*id.* at 7-8), and the doctrine of recoupment does not apply because the Trustee's claims and the Lustig Defendants' claims arise out of different transactions. (*Id.* at 9-10.) The Lustig Defendants' opposition takes the contrary view on each of these points. (*See Lustig Memo* at 22-40.) The Trustee's reply emphasized that "[a]llowing Defendants to avoid liability in these adversary proceedings because they chose to make an investment in Lakeview with the money Defendants withdrew from their BLMIS accounts would give Defendants preference over BLMIS customers by allowing Defendants' alleged losses to be treated as a claim for customer property." (*Reply in Support of the Trustee's Motion to Strike Affirmative Defenses*, dated Apr. 14, 2017 (*"Trustee Reply"*), at 1 (ECF Doc. # 79).) Furthermore, the money collected from the Funds was for the benefit of all net losers, not the Lustig Defendants. (*Id.* at 5.)

## DISCUSSION

**A.    Introduction**

Bankruptcy Code § 548(a) authorizes a bankruptcy trustee to avoid a fraudulent transfer made by the debtor, and SIPA extends that authority to the Trustee. 15 U.S.C. § 78fff-2(c)(3) ("[T]he trustee may recover any property transferred by the debtor which, except for such transfer, would have been customer property if and to the extent that

6

such transfer is voidable or void under the provisions of Title 11"). If the trustee avoids the transfer under § 548, Bankruptcy Code § 550(a) permits him to recover the initial transfer or its value, "if the court so orders," from the initial transferee, any subsequent transferees or the entity for whose benefit the transfer was made. The purpose of § 550(a) is to restore the estate to the condition it would have been in if the transfer had never occurred. *Hirsch v. Gersten* (*In re Centennial Textiles, Inc.*), 220 B.R. 165, 176 (Bankr. S.D.N.Y. 1998), *supplemented by* 220 B.R. 177 (Bankr. S.D.N.Y. 1998); *accord Nisselson v. Salim* (*In re Big Apple Volkswagen, LLC*), Adv. Proc. No. 11–2251 (JLG), 2016 WL 1069303, at *14 (Bankr. S.D.N.Y. Mar. 17, 2016); 5 ALAN N. RESNICK & HENRY J. SOMMER, COLLIER ON BANKRUPTCY ¶ 550.02[3], at 550-10 (16th ed. 2016) ("COLLIER"). The choice under § 550(a) between ordering the return of the property or its value gives the Court flexibility to grant the appropriate remedy when the value is uncertain or has changed since the transfer. "The factors which the Court should consider in determining whether to order turnover of the property rather than payment of the value include whether the value of the property (1) is contested; (2) is not readily determinable; or (3) is not diminished by conversion or depreciation." *Centennial Textiles,* 220 B.R. at 177; *accord Andrew Velez Constr., Inc. v. Consol. Edison Co. of New York, Inc.* (*In re Andrew Velez Constr., Inc.*), 373 B.R. 262, 274 (Bankr. S.D.N.Y. 2007); 5 COLLIER ¶ 550.02[3], at 550-10 to 550-11. Where the transfer involves cash, the Court's discretion does not come into play.

Finally, "[t]he trustee is entitled to only a single satisfaction under [550(a)]." 11 U.S.C. § 550(d). Thus, although the trustee can sue many defendants, his total recovery is limited to the initial transfer or its value. For example, if the debtor transferred $1.00

7

fraudulently, and that $1.00 was transferred and re-transferred fifty times, the Trustee can sue the initial transferee and the fifty subsequent transferees, but can only recover $1.00.

The Lustig Defendants do not dispute, again for the purposes of the Trustee's motion, that the transfers of fictitious profits they received are avoidable under Bankruptcy Code § 548(a).[3] Accordingly, the question is whether the Trustee's recovery under Bankruptcy Code § 550(a) is or should be limited based on the defenses they have asserted.

### B.    The Equitable Defenses

The Eighth and Ninth Affirmative Defenses ask the Court to use its general equity powers under § 105(a)[4] to dismiss the Trustee's claims or grant the Lustig Defendants an "equitable credit" in the full amount they invested in Lakeview which, we will assume, was reinvested in BLMIS by the Funds. Admittedly, no such defenses are specified in the Bankruptcy Code. Nor does the Bankruptcy Code permit the Court to limit the Trustee's recovery of a cash transfer for equitable reasons. The Lustig Defendants nevertheless argue that this equitable power exists by virtue of Bankruptcy Code § 105(a).

---

[3]    Although an initial transferee who received the transfer in good faith for value given to the debtor may defend the avoidance claim on that basis, 11 U.S.C. § 548(c), the Lustig Defendants do not concede that they did not give value, and have asserted this defense in their Fifteenth Affirmative Defense. (*Answer*, dated May 2, 2016, at 14 (ECF Doc. # 58); *Answer*, dated May 2, 2016, at 13-14 (ECF Adv. Proc. No. 10-04554 Doc. # 61).)

[4]    Section 105(a) states in relevant part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

8

We are frequently reminded that the equitable powers of the bankruptcy court "must and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206, (1988); *accord Law v. Siegel*, 134 S. Ct. 1188, 1194 (2014); *Solow v. Kalikow* (*In re Kalikow*), 602 F.3d 82, 96 (2d Cir. 2010); *Smart World Techs., LLC v. Juno Online Servs., LLC* (*In re Smart World Techs., LLC*), 423 F.3d 166, 184 (2d Cir. 2005); *Schwartz v. Aquatic Dev. Grp.*, Inc. (*In re Aquatic Dev. Grp., Inc.*), 352 F.3d 671, 680 (2d Cir. 2003) (Straub, J., concurring). Section 105(a) "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity," *Kalikow*, 602 F.3d at 96 (citation and internal quotation marks omitted); *New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc.* (*In re Dairy Mart Convenience Stores, Inc.*), 351 F.3d 86, 92 (2d Cir. 2003) (quoting *United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir.1986)), and extends only to the exercise of equity "in carrying out the *provisions* of the Bankruptcy Code, rather than to further the purposes of the Code generally, or otherwise to do the right thing." *Dairy Mart,* 351 F.3d at 92 (emphasis in original); *accord Kalikow*, 602 F.3d at 97.

Here, the credits that the Lustig Defendants seek are inconsistent with express provisions of the Bankruptcy Code and SIPA which give the credit they seek to the entity that gave the value to the debtor. Bankruptcy Code § 548(c) provides a defense to the extent that the initial transferee takes in good faith and "gave value to the debtor in exchange for such transfer or obligation." The Funds gave the value through the deposits that the Lustig Defendants are trying to conscript for their own benefit, and the Funds are entitled to the credit for those deposits under § 548(c). Similarly, the Funds

received a credit for those deposits under SIPA.  The Funds are net losers, and under the "Net Investment Method" approved by the Second Circuit, *see In re BLMIS*, 654 F.3d 229, 239 (2d Cir. 2011), *cert. denied*, 133 U.S. 24 (2012), they are entitled to net equity claims based on the difference between the amount they deposited and the amount they withdrew from their BLMIS accounts.  The deposits increased the allowable net equity claims asserted by the Funds, and the Lustig Defendants' invocation of equity would force the BLMIS estate to give a second round of credits based on the same deposits.

Moreover, the credits given to the Funds on account of these deposits are not just theoretical; the Trustee has distributed cash to the Funds based on the deposits.  The Trustee sued the Tremont Group, including Rye Broad Market, and in July 2011, the parties reached a settlement.[5]  The Trustee alleged that the entire Tremont Group had withdrawn $2.1 billion during the life of their accounts, of which Rye Broad Market had withdrawn $384,140,000.00.  (*Tremont Settlement Agreement* at ¶ G.)  Rye Broad Market was nonetheless a substantial net loser to the tune of $1,639,171,625.00.  (*Id.* at ¶¶ G, T.)  Under the settlement, the Tremont Group agreed to pay the Trustee $1 billion, (*id.* at ¶ 2), and the Trustee agreed, among other things, to allow Rye Broad Market's

---

[5]    A copy of the settlement agreement ("*Tremont Settlement Agreement*") is annexed as Exhibit A to the *Motion for Entry of Order Pursuant to Section 105(a) of the Bankruptcy Code and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure Approving a Settlement Agreement by and Between the Trustee and Tremont Group Holdings, Inc., Tremont Partners, Inc., Tremont (Bermuda) Limited, Rye Select Broad Market Fund, L.P., Rye Select Broad Market Prime Fund, L.P., Rye Select Broad Market Portfolio Limited, Rye Select Broad Market Insurance Fund, L.P., Rye Select Broad Market Xl Fund, L.P., Tremont Arbitrage Fund, L.P., Tremont Arbitrage Fund Ireland, Tremont Emerging Markets Fund - Ireland, Tremont Equity Fund -Ireland, Tremont International Insurance Fund, L.P., Tremont Long/Short Equity Fund, L.P., Tremont Market Neutral Fund, L.P., Tremont Market Neutral Fund Ii, L.P., Tremont Market Neutral Fund Limited, Tremont Opportunity Fund Limited, Tremont Opportunity Fund II, L.P., Tremont Opportunity Fund III, L.P., Rye Select Equities Fund, Tremont Multi Manager Fund, and LifeInvest Opportunity Fund LDC, Oppenheimer Acquisition Corp., MassMutual Holding LLC, Massachusetts Mutual Life Insurance Company, Robert I. Schulman, and Rye Select Broad Market Insurance Portfolio LDC*, dated July 28, 2011 ("*Tremont Settlement Motion*") (ECF Adv. Proc. No. 10-05310 Doc. # 17).

customer claim in the sum of $1,647,687,625.00. (*Id.* at ¶ 5.) In addition, the customer claims of Rye Broad Market and Portfolio Limited, another settling member of the Tremont Group, were increased by the aggregate amount of $800 million pursuant to 11 U.S.C. § 502(h)[6] on account of the $1 billion settlement payment. (*See id.*; *Tremont Settlement Motion* at ¶ 18.)

The Trustee also sued Senator to recover $95 million withdrawn over the life of its account and to disallow its customer net equity claim. In November 2014, the parties reached a settlement.[7] Senator, like Rye Broad Market, was a net loser, and at the time of the settlement, its net equity claim was $162,249,980.00. (*Senator Settlement Agreement* at ¶ E.) Senator agreed to pay the Trustee $95 million, (*id.* at ¶ 1), and the Trustee agreed to allow Senator's increased customer claim in the amount of $238,753,482.00. (*Id.* at ¶ 2.) The latter sum consisted of 88.6% of Senator's net equity claim and 100% of the settlement payment allowed under Bankruptcy Code § 502(h). (*Senator Settlement Motion* at ¶ 13.)

Through eight interim distributions, the Funds as well as other net losers have received slightly more than 60% of the allowed amounts of their claims. (*See Motion for an Order Approving Eighth Allocation of Property to the Fund of Customer Property*

---

[6] Section 502(h) states that "[a] claim arising from the recovery of property under section 522, 550, or 553 of this title shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition." In other words, Rye Broad Market and Portfolio Limited received an aggregate, allowed unsecured claim for 80% of the amount paid toward the settlement.

[7] A copy of the settlement agreement ("*Senator Settlement Agreement*") is annexed as Exhibit A to the *Motion for Entry of Order Pursuant to Section 105(a) of the Bankruptcy Code and Rules 2002 and 9019 of the Federal Rules of Bankruptcy Procedure Approving a Settlement Agreement by and Between the Trustee and Senator Fund SPC*, dated Nov. 18, 2014 ("*Senator Settlement Motion*") (ECF Adv. Proc. No. 09-01364 Doc. # 339).

*and Authorizing Eighth Interim Distribution to Customers,* Dec. 14, 2016, at ¶ 7 (ECF Case No. 08-01789 Doc. # 14662).)[8] These payments reflect credit for the same investments the Lustig Defendants claim they are entitled to use to defeat their own liability.

### B.    Bankruptcy Code § 550(d)

The Lustig Defendants also contend through their Tenth Affirmative Defense that permitting the Trustee to recover against them would violate the single satisfaction rule embodied in 11 U.S.C. § 550(d). As noted, Section 550(a) allows the Trustee to recover an avoided transfer or its value, but under § 550(d), "[t]he trustee is entitled to only a single satisfaction under subsection (a) of this section." The single satisfaction rule is a limitation on recovery rather than a defense to the avoidance of the fraudulent transfer, but the effect is the same.

As explained earlier, Section 550(d) applies to limit a trustee's recovery in those situations where he sues multiple defendants to recover the value of the avoided initial transfer. *See White v. Jones* (*In re Butler Innovative Solutions, Inc.*), Adv. Proc. No. 10–10021, 2015 WL 1926814, at *8 (Bankr. D.D.C Apr. 27, 2015), *supplemented by* Adv. Proc. No., 10-10021, 2015 WL 5118684 (Bankr. D.D.C. Aug. 28, 2015). The Trustee sued the Funds as initial transferees based on their withdrawals from their BLMIS accounts. He did not sue them as subsequent transferees of the Lustig Defendants, who are liable to the estate on account of the initial transfers that they received. Thus, even if the

---

[8]    The motion to approve the eighth distribution was granted on Jan. 12, 2017. (*Order Approving Eighth Allocation of Property to the Fund of Customer Property and Authorizing Eighth Interim Distribution to Customers*, dated Jan. 12, 2017 (ECF Case No. 08-01789 Doc. # 14836).)

12

Trustee recovered the entire initial transfers made to the Funds, Bankruptcy Code § 550(d) does not foreclose the Trustee from recovering the full amount of the initial transfers made to the Lustig Defendants.

**C.    Recoupment**

The Eleventh Affirmative Defense relies on the doctrine of recoupment. Recoupment rights are determined pursuant to nonbankruptcy law. *New York State Elec. & Gas Corp. v. McMahon* (*In re McMahon*), 129 F.3d 93, 96 (2d Cir. 1997). Under New York law,

> [r]ecoupment means a deduction from a money claim through a process whereby cross demands arising out of the same transaction are allowed to compensate one another and the balance only to be recovered. Of course, such a process does not allow one transaction to be offset against another, but only permits a transaction which is made the subject of suit by a plaintiff to be examined in all its aspects, and judgment to be rendered that does justice in view of the one transaction as a whole.

*Id.* (quoting *Nat'l Cash Register Co. v. Joseph*, 86 N.E.2d 561, 562 (N.Y. 1949)); *accord Westinghouse Credit Corp. v. D'urso*, 278 F.3d 138, 146 (2d Cir. 2002).

In bankruptcy, "recoupment seeks to avoid the unjust result that would occur if a debtor who has been overpaid pre-petition by a party in a contract is permitted post-petition to make a claim under the contract against that party without regard to the overpayment it has received." *McMahon*, 129 F.3d at 96. Thus, it ignores the demarcation between pre and post-petition debits and credits. Nevertheless, "[i]n light of the Bankruptcy Code's strong policy favoring equal treatment of creditors and bankruptcy court supervision over even secured creditors, the recoupment doctrine is a limited one and should be narrowly construed." *McMahon*, 129 F.3d at 97.

13

Assuming that the doctrine of recoupment could ever serve as a defense to a fraudulent transfer claim, it is not available to the Lustig Defendants because the parties' claims arise from different transactions. The Trustee's claims against the Lustig Defendants arise from their withdrawal of fictitious profits from their BLMIS accounts. Their recoupment credit is based on their investment of the withdrawn funds in Lakeview which is an entirely different transaction. Even if one accepted that the credit arises from the Funds' reinvestment of money traceable back to those withdrawals, the reinvestment is still a separate transaction governed by whatever account agreements the Funds had with BLMIS.

### D.     The Lustig Defendants' Authorities

Finally, the Lustig Defendants' authorities are distinguishable. They rely mainly on two cases. In *Dobin v. Presidential Fin. Corp. of Delaware Valley* (*In re Cybridge Corp.*), 312 B.R. 262 (D.N.J. 2004), the Cybridge Corporation ("Cybridge") entered into a pre-petition "factoring" agreement with Presidential Financial Corporation of Delaware Valley ("Presidential"). Presidential advanced up to 80% of the value of Cybridge's eligible accounts receivable, and Presidential's loan was secured, *inter alia*, by a first lien on the accounts receivable. Presidential collected the receivables from the customer and applied the payments to the outstanding debt. *Id.* at 265.

Cybridge filed a chapter 11 case, but did not list Presidential as a creditor or provide it with notice of the bankruptcy. As a result, Presidential continued to advance funds and collect the accounts receivable. *Cybridge*, 312 B.R at 265. During the chapter

14

11 period, Presidential collected $163,847.00 but advanced $192,200.00 in new loans.[9] *Id.* Following the conversion, the chapter 7 trustee commenced an adversary proceeding to avoid and recover the post-petition collections as violative of 11 U.S.C. § 549(a).[10]

The Bankruptcy Court granted summary judgment and the District Court affirmed. It ruled that the recovery was barred by Bankruptcy Code § 550(d) which "empowers courts to prohibit a trustee from recovering under Section 550(a) from a transferee that has already returned to the estate that which was taken in violation of the Code." *Cybridge*, 312 B.R. at 271. "Cash is fungible," and Presidential had returned the cash it collected through new advances. This limited the trustee's recovery to zero under Bankruptcy Code § 550(a) because the value of the transfer had already been repaid. *Id.* at 271-72. Finally, the grant of an "equitable credit" under Bankruptcy Code § 105(a) to limit the amount of recovery under § 550(a) did not conflict with the Bankruptcy Code. The equitable credit left the estate in the same position it would have been in but for the avoided transfer, and prevented the injustice of forcing Presidential to pay $163,847.00 despite the fact that it was deceived into continuing the lending relationship post-

---

[9]   It appears that Presidential collected accounts receivable after the case was converted to chapter 7. *See Cybridge*, 312 B.R. at 265.

[10]  Section 549(a) provides:

  (a) Except as provided in subsections (b) or (c) of this section, the trustee may avoid a transfer of property of the estate—
  (1) that occurs after the commencement of the case; and
  (2)(A) that is authorized only under section 303(f) or 542(c) of this title; or
  (B) that is not authorized under this title or by the court.

15

petition during which it had advanced $192,200.00 which it was likely never to recoup. In addition, it was forced to defend itself at considerable cost. *Id.* at 273.

The Lustig Defendants' other authority, *Bakst v. Sawran* (*In re Sawran*), 359 B.R. 348 (Bankr. S.D. Fla. 2007), extended *Cybridge*'s rationale to subsequent transferees. There, the debtor's father supported the debtor, and the debtor paid $20,000.00 to her father from the proceeds of the settlement of a personal injury claim. When the father's health deteriorated and he could no longer care for the debtor, he transferred $10,000.00 to his son and daughter-in-law and $10,000.00 to his daughter, instructing them to pay the debtor's rent and living expenses. They paid an aggregate of $12,000.00 to the debtor before the bankruptcy and an additional $8,000.00 after the bankruptcy. *Id.* at 350-51.

The trustee sued the father, obtained a $20,000 preference judgment, and sued the son, the son's wife and the daughter (collectively, the "Defendants") as subsequent transferees. Relying on *Cybridge,* the Bankruptcy Court concluded that permitting the Trustee to recover $20,000.00 from the Defendants after they had returned $12,000.00 to the debtor pre-petition would create a $12,000.00 windfall that violated the single satisfaction rule under § 550(d). *Id.* at 353. The Defendants were also entitled to an equitable credit under Bankruptcy Code § 105(a). Granting the equitable credit was consistent with the Bankruptcy Code because the Defendants restored the debtor to the financial condition she would have been if the $12,000.00 transfer had never occurred. *Id.* at 354. Further, the Defendants accepted the $20,000, not for personal gain, but to

16

take care of the debtor after her father became incapacitated, and disbursed the money to the debtor at the father's request. *Id.*[11]

Assuming that the cases were correctly decided, they are distinguishable. In both cases, the party sued by the trustee had already returned part or all of the initial transfer to the debtor or the estate before the bankruptcy had been commenced or converted. These payments cured the diminution in the value and made the debtor or the estate whole. Moreover, the parties had acted in good faith, and in fact, Presidential had been duped into continuing to collect accounts receivable and advance fresh funds during the chapter 11.

Here, in contrast, the Lustig Defendants did not repay BLMIS, the Funds did and received the credit for those payments. Instead, the Lustig Defendants withdrew their funds, obtained complete dominion and control over the money and were free to use it as they saw fit. No one forced them to invest in Lakeview, and they are in no different economic position than any other customer who withdrew funds from his BLMIS account and invested those funds in a business that failed. In fact, they are in a better position; they have recovered a portion of their losses from Lakeview. (*See Lustig Memo* at 9 n. 2 & 14 n. 4.)[12] Finally, the payments recovered from the Funds under the settlements were for the benefit of all net losers. Granting the Lustig Defendants an

---

[11] In contrast, the Bankruptcy Court concluded that the Defendants were not entitled to a credit for the $8,000.00 they transferred to the debtor post-petition. The Court did not rely on equity in reaching this conclusion. Instead, it performed a straight statutory analysis mandated by Bankruptcy Code § 550(a)(2), and concluded that the Defendants did not give value to the father in exchange for the subsequent transfer. The Bankruptcy Court did not explain the reason for the different analysis.

[12] The Lustig Defendants did not say how much they recovered from Lakeview, but stated that they provided the information to the Trustee, and the Trustee states that they received approximately $800,000.00. (*Trustee Reply* at 2.)

17

equitable credit will potentially take money out of the pockets of the net losers and give it to them.

Accordingly, the Eighth through Eleventh Affirmative Defenses are stricken, and the Twelfth Affirmative Defense is withdrawn.  Settle order on notice.

Dated:   New York, New York
         June 1, 2017

                                        /s/ *Stuart M. Bernstein*
                                        STUART M. BERNSTEIN
                                        United States Bankruptcy Judge