UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In re:                                                      :
                                                            :    Adv. Proc. No. 08-01789 (SMB)
SECURITIES INVESTOR PROTECTION              :
CORPORATION,                                         :    SIPA Liquidation
                                                            :    (Substantively Consolidated)
                            Plaintiff,     :
                                                            :
               – against –                          :
                                                            :
BERNARD L. MADOFF INVESTMENT            :
SECURITIES LLC,                                      :
                                                            :
                            Defendant.    :
------------------------------------------------------------X
In re:                                                      :
                                                            :
BERNARD L. MADOFF,                              :
                                                            :
                            Debtor.         :
------------------------------------------------------------X
IRVING PICARD, Trustee for the Liquidation  :
of Bernard L. Madoff Investment Securities   :
LLC,                                                        :
                                                            :
                            Plaintiff,     :
                                                            :
               – against –                          :    Adv. Proc. No. 10-04417 (SMB)
                                                            :
THE LUSTIG FAMILY 1990 TRUST and     :
DAVID I. LUSTIG, individually and in his      :
Capacity as Trustee for The Lustig Family     :
1990 Trust,                                                 :
                                                            :
                            Defendants.  :
------------------------------------------------------------X
IRVING PICARD, Trustee for the Liquidation  :
of Bernard L. Madoff Investment Securities   :
LLC,                                                        :
                                                            :
                            Plaintiff,     :
                                                            :
               – against –                          :    Adv. Proc. No. 10-04554 (SMB)
                                                            :
DAVID IVAN LUSTIG,                              :

```
                                              :
                       Defendant.             :
------------------------------------------------------X
```

# MEMORANDUM DECISION AND ORDER DENYING
# MOTION FOR RECONSIDERATION

**A P P E A R A N C E S:**

**BAKER & HOSTETLER LLP**
*Attorneys for Plaintiff Irving Picard, Trustee*
45 Rockefeller Plaza
New York, NY 10111

>    David J. Sheehan, Esq.
>    Nicholas J. Cremona, Esq.
>    Dean D. Hunt, Esq.
>        Of Counsel

**LAW OFFICE OF RICHARD E. SIGNORELLI**
*Attorney for Defendants*
799 Broadway, Suite 539
New York, NY 10003

>    Richard E. Signorelli, Esq.
>    Bryan Ha, Esq.
>        Of Counsel

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

Defendants David I. Lustig ("Lustig") and The Lustig Family 1990 Trust (the "Lustig Trust," and together with Lustig, the "Defendants") seek reconsideration of the *Order Granting Partial Summary Judgment Striking Affirmative Defenses*, dated June 12, 2017 ("*Partial Summary Judgment Order*") (ECF Doc. # 83),[1] which incorporated this Court's memorandum decision in *Picard v. Lustig* (*In re BLMIS*), 568 B.R. 481 (Bankr. S.D.N.Y. 2017) (*"Lustig"*), *request for leave to appeal denied*, Nos. 17-cv-4952 & 17-cv-4972 (GHW), 2017 WL 4838575 (S.D.N.Y. Oct. 24, 2017), pursuant to Rule 60(b)

---

[1] The filings in each adversary proceeding are substantially identical, and unless otherwise indicated, all ECF references are to the docket of Adv. Proc. No. 10-04417.

of the Federal Rules of Civil Procedure.  (*See Notice of Motion for Reconsideration*, dated June 27, 2017 (ECF Doc. # 85); and *Memorandum of Law in Support of Motion for Reconsideration*, dated June 27, 2017 ("*Reconsideration Motion*") (ECF Doc. # 86).)  For the reasons stated, the *Reconsideration Motion* is denied.

## BACKGROUND

### A.    The Prior Proceedings

The Court assumes familiarity with its decision in *Lustig*, and limits the background to the facts necessary for the disposition of the *Reconsideration Motion*.  Irving H. Picard (the "Trustee"), as trustee for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") under the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa, *et seq.* ("SIPA"), sued the Defendants in separate adversary proceedings to avoid and recover fictitious profits withdrawn from their BLMIS accounts within two years of December 11, 2008 as intentional fraudulent transfers under 11 U.S.C. §§ 548(a)(1)(A) and 550(a).  *Lustig*, 568 B.R. at 484-85.  According to the Complaints, the Lustig Trust withdrew $5 million of which $4,241,336 constituted fictitious profits, and Lustig withdrew $ 2 million of which $1,863,225 represented fictitious profits.

In their answers, the Defendants asserted several defenses centered on the notion that the money they withdrew from BLMIS made a round trip back into BLMIS through the investment by different BLMIS customers.  After the Defendants withdrew their fictitious profits, that invested the money with Lakeview Investment, LP ("Lakeview"), Lakeview, in turn, invested the Defendants' fictitious profits in other BLMIS feeder funds, the feeder funds invested the fictitious profits in BLMIS and these funds lost their investments when the Madoff Ponzi scheme collapsed.  The Defendants asserted

affirmative defenses based on this "reinvestment" of their fictitious profits. They asked the Court (i) to use its equitable powers to dismiss the avoidance claims (Eighth Affirmative Defense), (ii) to grant them an "equitable credit" (Ninth Affirmative Defense), (iii) to bar the avoidance claims under the single satisfaction rule set forth in Bankruptcy Code § 550(d) (Tenth Affirmative Defense), and (iv) to provide them with credit under principles of recoupment (Eleventh Affirmative Defense). *Lustig*, 568 B.R. at 485.[2]

The Trustee moved to strike these affirmative defenses pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, and the Defendants supplied substantial evidence in opposition to the motion. To streamline the Court's consideration of the legal viability of the affirmative defenses, the parties agreed to treat the motion as one for partial summary judgment in which the Court assumed (solely for purposes of the motion) that the Defendants' $7 million Lakeview investment was ultimately deposited back into BLMIS through the BLMIS accounts belonging to two hedge funds (the "Funds"), and the value of the Funds' accounts was effectively zero when Madoff's Ponzi scheme was revealed. *Id.*

The Court granted the Trustee's motion. With respect to the equitable defenses, the Court observed that the "equitable credit" the Defendants sought had already been allocated to the Funds under the Bankruptcy Code and the SIPA. The cash deposits made by the Funds into their BLMIS accounts (including the Defendants' $7 million) "gave value" to BLMIS under section 548(c) of the Bankruptcy Code and decreased the

---

[2] The Defendants also asserted that they were entitled to set off the reinvestment amount pursuant to 11 U.S.C. § 553, but subsequently withdrew that defense. *Lustig*, 568 B.R. 485.

4

Funds' fraudulent transfer liability. *Id.* at 487. Likewise, the cash deposits (including the Defendants' $7 million) increased the Funds' net equity claims against the BLMIS customer property estate. *Id.* at 487-88 (citing *In re BLMIS*, 654 F.3d 229, 239 (2d Cir. 2011), *cert. denied*, 567 U.S. 934 (2012)). To give the Defendants "equitable credit" for the same $7 million in deposits would "force the BLMIS estate to give a second round of credits based on the same deposits." *Id.* at 488. Hence, equity did not supply a basis to give the Defendants a $7 million credit or dismiss the Trustee's avoidance claims. The Court also ruled that the single satisfaction rule did not apply because the Trustee sued the Funds as initial transferees of their own BLMIS accounts and not as subsequent transferees of the Defendants' BLMIS accounts, *id.* at 489, and the doctrine of recoupment was not available to the Defendants "because the parties' claims ar[o]se from different transactions." *Id.* at 490.

## B.    The *Reconsideration Motion*

The Defendants filed a timely notice of appeal on June 26, 2017,[3] and the *Reconsideration Motion* the next day. They argue that the Court made several factual and legal errors largely revolving around the related notions that (i) they never received the money they withdrew, (*Reconsideration Motion* at 6, 15), they were "mere conduits," (*id.* at 8-9), and their funds were immediately reinvested in BLMIS through Lakeview (and others) as part of a single, integrated transaction, (*id.* at 15), (ii) the Funds were subsequent transferees of the Defendants' withdrawals rather than initial transferees of their own withdrawals, (*id.* at 9-11), and (iii) the Funds were not entitled

---

[3]    The District Court denied the Defendants' motion for leave to appeal by order dated October 24, 2017. *See Picard v. Lustig Family 1990 Trust*, Nos. 17-cv-4952 & 17-cv-4972 (GHW), 2017 WL 4838575, at *1, *4 (S.D.N.Y. Oct. 24, 2017).

to any credit for the monies they deposited in BLMIS that could be traced back to the Defendants' withdrawals because those deposits consisted of the Defendants' fictitious profits. (*Id.* at 5-6.)

## DISCUSSION

The *Reconsideration Motion* seeks relief under Rule 60(b) of the Federal Rules of Civil Procedure,[4] which provides, in pertinent part, that the "court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . or (6) any other reason that justifies relief. Fed. R. Civ. P. 60(b). "Properly applied[,] Rule 60(b) strikes a balance between serving the ends of justice and preserving the finality of judgments." *Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986) (citations omitted); *accord Kotlicky v. United States Fid. & Guar. Co.*, 817 F.2d 6, 9 (2d Cir. 1987) ("In deciding a Rule 60(b) motion, a court must balance the policy in favor of hearing a litigant's claims on the merits against the policy in favor of finality."). However, "since 60(b) allows extraordinary judicial relief, it is invoked only if the moving party meets its burden of demonstrating 'exceptional circumstances.'" *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1142 (2d Cir. 1994); *accord Nemaizer*, 793 F.3d at 61. "In addition to demanding that the movant show 'exceptional circumstances,' the courts of this circuit also require that the evidence in support of the motion be highly convincing, that the movant show good cause for the failure to act sooner, and that no undue hardship be imposed on the other parties as a result." *Freedom, N.Y., Inc. v. United States*, 438 F. Supp. 2d 457, 462-63 (S.D.N.Y.

---

[4] Federal Civil Rule 60 is made applicable to this adversary proceeding pursuant to Rule 9024 of the Federal Rules of Bankruptcy Procedure.

2006) (quotation and internal quotation marks omitted). Whether to grant a Rule 60(b) is committed to the "sound discretion" of the trial court and reviewed on appeal for abuse of that discretion. *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012) (quoting *Montco, Inc. v. Barr* (*In re Emergency Beacon Corp.*), 666 F.2d 754, 760 (2d Cir. 1981)).

"Mistake" under Rule 60(b)(1) encompasses both legal and factual mistakes, including those made by the court. *United Airlines, Inc. v. Brien*, 588 F.3d 158, 175 (2d Cir. 2009); *Gey Assocs. Gen. P'ship v. 310 Assocs.* (*In re 310 Assocs.*), 346 F.3d 31, 35 (2d Cir. 2003); *Schildhaus v. Moe*, 335 F.2d 529, 531 (2d Cir. 1964) (Friendly, J.). The mistake must be "material," such that it would have "changed the outcome of the court's judgment." *Matura v. United States*, 189 F.R.D. 86, 89 (S.D.N.Y. 1999). The movant may not advance new legal arguments, *Paddington Partners*, 34 F.3d at 1147, or reargue matters already decided. *Niederland v. Chase*, 425 F. App'x 10, 12 (2d Cir. 2011) ("[I]t is well established that a motion to reconsider [under Rule 60(b)(1)] should not be granted where the moving party seeks solely to relitigate an issue already decided. . . .") (internal quotation marks omitted) (summary order); *Matura* 189 F.R.D. at 90 ("A motion for reconsideration is an extraordinary remedy, and this Court will not reconsider issues already examined simply because Petitioner is dissatisfied with the outcome of his case.").

Rule 60(b)(6) authorizes relief from a final judgment or order for "any other reason that justifies relief," and has been described as a "grand reservoir of equitable power to do justice in a particular case." *Stevens*, 676 F.3d at 67 (quoting *Matarese v. LeFevre*, 807 F.2d 98, 106 (2d Cir. 1986)). However, "that reservoir is not bottomless,"

7

and the movant must demonstrate that "extraordinary circumstances" warrant relief. *Id.* Motions made under Rule 60(b)(6) must "not be premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5)." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 (1988) (footnote omitted). In particular, Rule 60(b)(1) and 60(b)(6) are "mutually exclusive," such "that any conduct which generally falls under the former cannot stand as a ground for relief under the latter." *Stevens*, 676 F.3d at 67 (quoting *United States v. Cirami*, 535 F.2d 736, 740 (2d Cir. 1976)). Although the *Reconsideration Motion* mentions Rule 60(b)(6), (*Reconsideration Motion* at 3), the Defendants fail to articulate a ground separate from those made under Rule 60(b)(1). As a result, the portion of the motion seeking relief under Rule 60(b)(6) is denied and requires no further consideration.[5]

## A.    The Equitable Defenses

The Defendants' core argument is that they never actually received their aggregate $7 million withdrawal, and were mere conduits. They argue that they transferred the withdrawals to Lakeview, Lakeview ultimately reinvested the money with the Funds, and the Funds reinvested the money with BLMIS. They also argue — incorrectly — that the Court assumed in deciding the motion for partial summary

---

[5]     The Defendants filed the *Reconsideration Motion* under Rule 60(b), but the rule only applies to "a *final* judgment, order or proceeding," FED. R. CIV. P. 60(b) (emphasis added), and the *Partial Summary Judgment Order* was not a final order. *See Generva Pharm. Tech. Corp. v. Barr Labs. Inc.*, 386 F.3d 485, 494-95 (2d Cir. 2004) (a partial summary judgment is not an appealable final judgment unless a court enters a partial final judgment under Federal Civil Rule 54(b)). The Trustee did not challenge the Defendants' reliance on Rule 60(b), and the parties' briefs focused exclusively on Rule 60(b). Accordingly, the Court will decide the *Reconsideration Motion* under Rule 60(b)(1), but even if it decided the *Reconsideration Motion* under Rule 59 and Local Bankruptcy Rule 9023-1, the result would be the same.

judgment that the "Defendants never actually received any of the money," (*Reconsideration Motion* at 2), apparently compounding the Court's errors.

Their argument is based on a misreading of the Court's decision and a misunderstanding of fraudulent transfer law. The Court concluded, based on the undisputed facts, that the Defendants were the initial transferees of the $7 million because they exercised dominion and control over their withdrawals. *Lustig*, 568 B.R. at 491-92. They made the unilateral decision to withdraw the money and reinvest it in Lakeview, a fact they have consistently acknowledged during the entire course of these proceedings. (*See Defendants' Memorandum of Law in Opposition to Trustee's Motion to Strike Certain Affirmative Defenses*, dated Mar. 31, 2017, at 3-4 ("Mr. Lustig withdrew the $2,000,000 from the IRA Account solely and specifically for the purpose of immediately reinvesting the money back into BLMIS through [Lakeview]. . . . On August 1, 2007, *pursuant to Mr. Lustig's direction*, Fiserv transferred the $2,000,000 by wire to Lakeview . . . .") (emphasis added) (ECF Doc. # 76); *id.* at 10-11 ("Defendants withdrew the $5,000,000 from the Trust Account on July 24, 2007, solely and specifically for the purpose of immediately reinvesting the money back into BLMIS through Lakeview. . . . On or about July 30, 2007, *pursuant to Mr. Lustig's authorization and direction*, the $5,000,000 was transferred from City National Bank to Lakeview's bank account at Wells Fargo.") (emphasis added); *accord Reply Memorandum of Law In Further Support of Motion for Reconsideration and Stay of Discovery*, dated July 25, 2017 ("*Reply*"), at 8 (ECF Doc. # 96); *see also Declaration of David Ivan Lustig*, dated Apr. 28, 2011, at ¶ 6 ("I specifically made [the $2 million withdrawal] to make another investment with Madoff.") (ECF Doc. # 78-1 at pp. 6-10);

9

*Declaration of David I. Lustig*, dated Apr. 28, 2011, at ¶ 6 ("I specifically made [the $5 million withdrawal] to make another investment with Madoff.") (ECF Doc. # 78-2 at pp. 114-18).) The Defendants' assertion that they were mere conduits rather than initial transferees of the $7 million they orchestrated and controlled borders on the frivolous. *See Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 893 (7th Cir. 1988) (a "transferee" exercises "dominion over the money or other assets" and has the right to use such money or other assets for his own purposes); *accord Christy v. Alexander & Alexander of New York Inc.* (*In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson & Casey*), 130 F.3d 52, 57-58 (2d Cir. 1997) (agreeing with *Bonded Fin.*'s "dominion and control test" to determine transferees and ruling that a "mere conduit" is not a transferee), *cert. dismissed*, 524 U.S. 912 (1998).

Investing with Lakeview was their choice. To paraphrase Judge Easterbrook, they were free to reinvest the $7 million in lottery tickets or uranium stocks. *Bonded Fin.*, 838 F.2d at 894. They decided, instead, to reinvest it with Lakeview. In hindsight, the decision was the wrong one, but that does not change the fact that they were the initial transferees of the $7 million because they exercised dominion and control over the money. They were not mere conduits.

The Defendants reliance on *Gropper v. Unitrac, S.A.* (*In re Fabric Buys of Jericho, Inc.*), 33 B.R. 334 (Bankr. S.D.N.Y. 1983) in support of their "mere conduit" argument, (*Reconsideration Motion* at 8), is misplaced. There, the plaintiff's law firm received a payment from the defendant to settle a business dispute. *Fabric Buys*, 33 B.R. at 335. The law firm deposited the settlement into an escrow account maintained by the firm for its clients, and shortly thereafter, wrote a check for the settlement

amount to the plaintiff. *Id.* Approximately two months later, the defendant filed for bankruptcy and its trustee sued the law firm to avoid and recover the settlement payment as a preference under sections 547 and 550 of the Bankruptcy Code. *Id.* The Court ruled that the law firm was not an initial transferee; rather it acted "as a mere conduit of funds from" the defendant to the plaintiff. *Id.* at 337.

The law firm in *Fabric Buys* held the settlement in trust for its client; it was not free to use the client's funds in escrow for its own benefit, and had it done so, the guilty attorneys undoubtedly would have been disciplined and possibly prosecuted for stealing client funds. Hence, the law firm was not a transferee. Here, the Defendants, by their own admission, exercised dominion and control over the $7 million; they withdrew it, they could have used it for any purpose, and decided to reinvest it in Lakeview. Under well-settled law, the Defendants were the initial transferees of the $7 million.[6]

The Court's conclusion that the equities did not rest with the Defendants was driven in large part by the fact that the Funds received the $7 million credit for any deposits traceable to the Defendants' withdrawals, and crediting the Defendants with those later deposits would be inconsistent with the Bankruptcy Code and the SIPA. *Lustig*, 568 B.R. at 487-89. The Defendants challenge this conclusion. They argue that most of their $7 million withdrawal and subsequent investment with Lakeview consisted of fictitious profits, fictitious profits are not considered in calculating the net equity

---

[6] The Defendants also continue to rely on *Dobin v. Presidential Fin. Corp. of Delaware Valley (In re Cybridge Corp.)*, 312 B.R. 262 (D.N.J. 2004) and *Bakst v. Sawran (In re Sawran)*, 359 B.R. 348 (Bankr. S.D. Fla. 2007) in support of their equitable theories as well as their arguments relating to the single satisfaction rule. (*Reconsideration Motion* at 7, 10, 12-13.) The Court addressed these decisions at some length in *Lustig. See* 568 B.R. at 490-92. The *Reconsideration Motion* merely repeats the Defendants' earlier arguments.

claim of a BLMIS customer, and therefore, the Funds are not entitled to any credit for depositing the Defendants' fictitious profits. (*Reconsideration Motion* at 5-6.)

The Defendants' argument confuses inter-account transfers with the investment of actual cash. The relevant portions of the Defendants' authorities — *SIPC v. BLMIS* (*In re BLMIS*), 499 B.R. 416 (S.D.N.Y. 2013) ("*Antecedent Debt Decision*"), *request for interlocutory appeal denied*, 987 F. Supp. 2d 309 (S.D.N.Y. 2013) and *SIPC v. BLMIS* (*In re BLMIS*), 522 B.R. 41 (Bankr. S.D.N.Y. 2014) ("*Inter-Account Decision*"), *aff'd*, Nos. 15 Civ. 1151 *et al.* (PAE), 2016 WL 183492 (S.D.N.Y. Jan. 14, 2016), *aff'd*, 697 F. App'x 708 (2d Cir. 2017) (summary order) — addressed the treatment of the transfers of fictitious profits between BLMIS accounts. In the *Inter-Account Decision*, this Court held that a transferee was not entitled to any credit for the receipt of fictitious profits from a transferor for purposes of calculating the transferee's net equity claim against the BLMIS estate. 522 B.R. at 52-53. Likewise, the District Court in the *Antecedent Debt Decision* ruled that the inter-account transfers of fictitious profits did not increase the principal deposits in a transferee's account for purposes of determining "value" under the section 548(c) defense to fraudulent transfer claims. 499 B.R. at 428-29. The Defendants assert that the rulings in these cases prevent the Funds from receiving similar credits for the portion of the $7 million constituting fictitious profits. (*Reconsideration Motion* at 5.)

The Trustee's claims against the Defendants do not involve inter-account transfers, and the Defendants' argument ignores the Second Circuit's "*Net Equity Decision*," *In re BLMIS*, 654 F.3d 229 (2d Cir. 2011), *cert. denied*, 133 S. Ct. 24 (2012). In the *Net Equity Decision*, the Second Circuit approved the Trustee's method of

calculating a BLMIS customer's net equity claims based on *cash* withdrawals and *cash* deposits. *Id.* at 238. Here, the Funds did not receive the Defendants' $7 million through an inter-account transfer of fictitious profits from the Defendants. Instead, they invested $7 million in *cash* in their BLMIS accounts. As described at length in *Lustig*, the Funds received credit in accordance with the *Net Equity Decision* for those cash deposits.

### B.    Bankruptcy Code § 550(d)

Next, the Defendants challenge the ruling that the Trustee's claims against them do not violate the single satisfaction rule set forth in Bankruptcy Code § 550(d). They argue that the Court mistakenly treated the Funds as initial transferees rather than as the Defendants' subsequent transferees, the Trustee recovered the subsequent transfers from the Funds through the settlements described in *Lustig*, and the Trustee cannot recover the initial transfer from the Defendants. The Court addressed this argument in *Lustig* and rejected it. 568 B.R. at 489. The Defendants and the Funds made separate cash withdrawals from their respective BLMIS accounts, and each was an initial transferee within the meaning of fraudulent transfer law.

The Defendants ignore this distinction, and cite two decisions in support of their interpretation of the single satisfaction rule that are inapposite. In *McCord v. Agard* (*In re Bean*), 252 F.3d 113 (2d Cir. 2001), a trustee sued the post-petition purchaser of the debtor's home after the debtor had remitted his equity in the sale proceeds, approximately $60,000, to the trustee. The Second Circuit held that Bankruptcy Code § 549 only allowed the trustee to recover post-petition transfers of "property of the estate," "property of the estate" was limited to the debtor's equity in the property on the

13

10-04554-smb    Doc 98    Filed 12/06/17    Entered 12/06/17 12:22:40    Main Document
Pg 14 of 16

petition date, and under Bankruptcy Code § 550, the trustee is entitled to recover the debtor's equity in the property as of the petition date. *Id.* at 117. The trustee had already recovered the equity directly from the debtor who had turned over the approximate $60,000, and the District Court correctly reversed the Bankruptcy Court and dismissed the complaint. *Id.*

In *Terry v. Meredith* (*In re Stephen S. Meredith CPA, P.C.*), 367 B.R. 558 (E.D. Va. 2007), *aff'd*, 527 F.3d 372 (4th Cir. 2008), the debtor transferred his accounting practice to a corporation owned by his wife, but after the institution of divorce proceedings, the debtor resurrected his practice, *id.* at 560, and following bankruptcy, his trustee took possession of his practice. *Id.* at 563. The trustee nonetheless sued the debtor's wife under several theories to recover the value of the transferred accounting practice. Citing Bankruptcy Code § 550(d), the Court ruled that the trustee had already taken possession of and liquidated the accounting practice, and could not, therefore, recover the value of that same transfer from the debtor's wife. *Id.* at 563-64.

*Bean* and *Meredith* involved efforts by a trustee to recover the value of a single initial transfer after the estate had already recovered the value of that transfer from someone else. Here, there were two initial transfers, not a single initial transfer and a subsequent transfer. The Trustee separately sued the Funds and the Defendants to recover the distinct initial transfers. While the Defendants argue that there was really only one initial transfer by BLMIS (to them), they ignore the undisputed fact that BLMIS made separate transfers to both the Defendants and the Funds, and the Trustee is entitled under Bankruptcy Code § 548(a)(1)(A) to avoid the transfers to the

Defendants and recover their value under Bankruptcy Code § 550(a), without regard to whether he could or did recover the separate initial transfers from the Funds.

## C.    Recoupment

Finally, the Defendants urge the Court to reconsider the dismissal of their recoupment defense. They argue that the BLMIS transfer to them, their transfer to Lakeview, Lakeview's indirect transfer to the Funds, and the Funds deposits with BLMIS were all part of a single, integrated transaction. (*Reconsideration Motion* at 14-15.) They add that the Court viewed recoupment too narrowly, considering only whether the recoupment defense arose out of "a single contract," but failing to consider whether it arose from a "single set of transactions" or "a single integrated transaction." (*Reply* at 12.)

In *Lustig*, the Court observed that the Trustee's avoidance claims arose out of the Defendants withdrawal of fictitious profits, while the Defendants' recoupment defense arose from their investment in Lakeview. 568 B.R. at 490. Even if, as the Defendants argue, the Funds' reinvestment of money was traceable to those withdrawals, the reinvestment was "still a separate transaction governed by whatever account agreements the Funds had with BLMIS." *Lustig*, 568 B.R. at 490. All of the transactions were distinct, and the Defendants' assertions that the transactions constituted a "single set" or were "integrated" is legally untenable.

*Merrill v. Abbott* (*In re Indep. Clearing House Co.*), 77 B.R. 843 (D. Utah 1987), which the Defendants cite, illustrates why. In *Merrill*, the bankruptcy trustee of a Ponzi scheme debtor sued numerous investors to avoid and recover withdrawals. *Id.* at 848-

49. One of the defendants—Ruby Van Sant—asserted a recoupment defense based on her withdrawal and subsequent reinvestment of the same withdrawn funds with the debtor. The *Merrill* Court ruled that Van Sant may be entitled to a recoupment credit:

> If Van Sant can prove that her total investment with the debtors was one transaction and that she did not retain payments made to her by the debtors but rather reinvested those funds with the debtors, she is entitled to either a reduction in or an abatement of the damages. In other words, Van Sant should not have to return more than she actually received from the debtors. For example, if she ostensibly received $100,000 but $50,000 of that amount went to purchase other investment contracts from which she received nothing, she should only be liable for at most the $50,000 she received and not the whole $100,000.

*Id.* at 878.

Critical to the *Merrill* Court's decision was that Van Sant withdrew the money and directly reinvested it with the same entity. Here, the Defendants did not reinvest their $7 million withdrawal with BLMIS; they invested it with Lakeview. They repeatedly argue that their funds were reinvested with BLMIS but ignore the critical distinction that *they* did not reinvest the withdrawn funds with BLMIS. Accordingly, the Defendants cannot claim a recoupment credit.

## CONCLUSION

For the reasons stated, the *Reconsideration Motion* is denied, and their separate request to stay discovery pending the disposition of the *Reconsideration Motion* is denied as moot. So ordered.

Dated:  New York, New York
        December 6, 2017

                                    /s/ *Stuart M. Bernstein*
                                    STUART M. BERNSTEIN
                                    United States Bankruptcy Judge